# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-30314

United States Court of Appeals
Fifth Circuit

**FILED**

March 18, 2020

Lyle W. Cayce
Clerk

WILLIAM D. SHORT,

> Plaintiff - Appellant

v.

MARLIN N. GUSMAN, Sheriff, Orleans Parish; GARY D. MAYNARD; DARNLEY R. HODGE, SR.,

> Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-3174

Before KING, COSTA, and HO, Circuit Judges.

PER CURIAM:*

William Short, a captain in the Orleans Parish Sheriff's Office, was fired after failing a drug test. Short filed suit against the sheriff and the compliance director, a position established by a stipulated order in a prison-conditions class-action lawsuit. Short claimed that he was wrongfully terminated under

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-30314

Louisiana law and the Fourteenth Amendment's Due Process Clause. The district court dismissed Short's claims, and this appeal followed.

## I.

Short was fired after failing to report for a drug test and later testing positive for oxycodone, a drug for which he lacked a prescription. Short subsequently filed suit against Sheriff Marlin Gusman, Gary Maynard, and Darnley Hodge. Maynard and Hodge each served, at separate times, as the compliance director for the Orleans Parish Sheriff's Office (OPSO).

### A.

A consent decree arose from a class-action suit filed on behalf of prisoners incarcerated at the Orleans Parish Jail, seeking injunctive relief for alleged constitutional and statutory violations committed by Sheriff Gusman and other prison officials. *See Jones v. Gusman*, 296 F.R.D. 416, 426 (E.D. La. 2013). After the *Jones* plaintiffs complained about insufficient progress towards compliance with the consent decree, a stipulated order was negotiated and judicially approved. That stipulated order established a new position, the compliance director, to implement the consent decree. Accordingly, the compliance director was granted final decision-making authority over the entire jail until conditions sufficiently improved.

Under the stipulated order, the sheriff was directed, subject to the court's approval, to "appoint the Compliance Director from three candidates jointly nominated by" the other parties to the *Jones* litigation. The compliance director was designated as a "representative of the Court and . . . not an employee of OPSO," and the order stated that he would "be answerable only to the court," and removable only by the court.

As relevant to this appeal, the compliance director was granted "final authority to create, modify, abolish or transfer employee and contractor positions" and "to recruit, hire, discipline, terminate, promote, demote,

2

No. 19-30314

transfer, and evaluate employees and contractors." Notwithstanding that authority, for employees who "attained the rank of Captain or higher," the order stated that "termination of employment w[ould] be for misconduct, failing to satisfy job expectations, financial prudence, operational efficiency, or inhibiting progress toward Consent Judgment compliance."

Maynard served as compliance director from October 1, 2016, to February 19, 2018, and Hodge served thereafter.

**B.**

Short was assigned to work in the Orleans Parish Jail, and on September 6, 2017, was selected for a random drug test that consisted of an on-site urine test and subsequent laboratory testing. He failed to report for his initial drug test and later tested positive for oxycodone and methamphetamines at work. Subsequent laboratory testing confirmed the presence of oxycodone but not methamphetamine. Short could not produce a prescription for oxycodone when requested, and he was fired on September 22, 2017, for his "failure to report for drug screening within the required timeframe, failure to successfully pass a drug screen and failure to provide a supporting prescription."

Short then filed suit against Sheriff Gusman in his official capacity, former-Director Maynard in his official and individual capacities, and Director Hodge in his official capacity. Short's first claim, under 42 U.S.C. § 1983, was that his termination deprived him, without due process, of a property interest in continued employment and a reputational liberty interest. Short's second claim was that his termination violated Louisiana's drug-testing statute, La. Stat. Ann. §§ 49:1001-1021. Short sought both damages and equitable relief.

Sheriff Gusman and Maynard each filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district count granted both motions, finding that Short did not have a constitutionally protected property

3

interest in his employment,[1] and that Louisiana's drug-testing statute provided no cause of action for wrongful termination. The court also concluded that Maynard and Hodge were entitled to sovereign immunity. This appeal followed.

## II.

"A district court decision to dismiss for failure to state a claim . . . is reviewed *de novo*." *Stem v. Gomez*, 813 F.3d 205, 209 (5th Cir. 2016). "In analyzing the claims, all well-pleaded facts are accepted as true and should be examined 'in the light most favorable to the plaintiff.'" *Id.* (citation omitted). "Dismissal is appropriate if the complaint fails to plead sufficient 'facts to state a claim . . . that is plausible'" and "allows the court to draw the reasonable inference that the defendant is liable." *Id.* (citations omitted).

## III.

We must first analyze whether any of the defendants are entitled to sovereign immunity because sovereign immunity is jurisdictional. *See Cozzo v. Tangipahoa Par. Council*, 279 F.3d 273, 280 (5th Cir. 2002).

Gusman does not assert that he has immunity, and rightly so. Because Gusman was sued in his official capacity, the claims against him are properly considered as against his employer, the OPSO. *See Lewis v. Clarke*, 137 S. Ct. 1285, 1290-91 (2017) ("lawsuits brought against employees in their official capacity 'represent only another way of pleading an action against an entity of which an officer is an agent'" (citation omitted)). Accordingly, the OPSO does not enjoy sovereign immunity, because "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

---

[1] The district court did not explicitly analyze whether Short had a constitutionally protected liberty interest, but it did dismiss the entirety of his § 1983 claim.

No. 19-30314

Nor are Maynard and Hodge entitled to sovereign immunity. They assert that—insofar as they are sued in their official capacities—this suit is really against the United States because they essentially served as receivers appointed by a federal district court. We do "not simply rely on the characterization of the parties," however, "but rather must determine in the first instance whether the remedy sought is truly against the sovereign"—that is, whether the government is the "real party in interest." *See Lewis*, 137 S. Ct. at 1290; *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) ("[T]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." (citation omitted)). Here, Short seeks damages and injunctive relief (e.g., reinstatement) from OPSO,[2] not the United States. Accordingly, the parish is the real party in interest because the remedy sought is against the sheriff's office. And as we explained, the parish is not entitled to sovereign immunity.[3]

## IV.

Having addressed sovereign immunity, we next evaluate Short's claims on the merits. We first consider whether Short's termination deprived him of a constitutionally protected property or liberty interest without due process. We then consider whether Louisiana's drug-testing statute, La. Stat. Ann. §§ 49:1001-1021, creates a private cause of action for wrongful termination.

---

[2] Short also seeks damages against Maynard in his individual capacity, which is not barred by sovereign immunity. *Lewis*, 137 S. Ct. at 1291.

[3] The compliance directors also assert that they are entitled to judicial immunity. We do not need to address that defense, however, because we conclude below that Short's claims fail on the merits. *See infra* Part IV; *see also Lewis*, 137 S. Ct. at 1291 ("An officer in an individual-capacity action . . . may be able to assert *personal* immunity defenses . . . . But sovereign immunity 'does not erect a barrier against suits to impose individual and personal liability.'" (citation omitted)). Unlike sovereign immunity, judicial immunity does not present a jurisdictional question. *Cf. Boyd v. Carroll*, 624 F.2d 730, 732-33 (5th Cir. 1980) (holding that a defendant abandoned his judicial immunity affirmative defense by failing to plead it in his answer).

No. 19-30314

## A.

Employees with a constitutionally protected property interest in their positions must be afforded due process before being terminated, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985), which requires notice and an "opportunity for hearing appropriate to the nature of the case," *id.* at 542 (citation omitted). Although state law creates most property rights, federal law determines which interests are constitutionally protected. *Stem*, 813 F.3d at 211. Public employees have a constitutionally protected property interest in their continued employment if the employer's "right to terminate without cause is eliminated." *Id.* at 210. But "an employee who is terminable at will generally has no constitutionally-protected property interest." *Id.*

A restraint on an employer's discretion to terminate employment at will "may take the form of a statute, rule, handbook, or policy which limits the condition under which the employment may be terminated; or it may take the form of a more particularized mutual understanding with the employee." *Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003) (citations omitted). On the other hand, "[t]here is no property right if rules only provide considerations for the exercise of discretion" in making employment decisions. *Stem*, 813 F.3d at 212; *see also Evans v. City of Dallas*, 861 F.2d 846, 849 (5th Cir. 1988) (construing language in a personnel manual requiring "valid reasons" for termination of employment and "determin[ing] that the requirement of valid reasons merely establishes a procedure through which termination must be accomplished").

Under Louisiana law, employers may "end the employment relationship at any time, and for any reason, without liability, provided that the termination violates no statutory or constitutional provision and, obviously, that there is no contract of employment for a definite term." *Johnson v. Delchamps, Inc.*, 897 F.2d 808, 810 (5th Cir. 1990) (citing La. Civ. Code Ann.

6

art. 2747); *accord Meredith v. La. Fed'n of Teachers*, 209 F.3d 398, 403 (5th Cir. 2000). "[E]mployee manuals as well as company policies and procedures do not confer contractual rights upon employees nor create any exceptions to the 'employment at will' doctrine." *Mix v. Univ. of New Orleans*, 609 So. 2d 958, 964 (La. Ct. App. 1992). Accordingly, public officers such as "deputy sheriff[s] ha[ve] no statutorily prescribed term of office, but merely serve[ ] at the pleasure of the sheriff." *Boyer v. St. Amant*, 364 So. 2d 1338, 1340 (La. Ct. App. 1978); *see also Parker v. Cronvich*, 567 F. Supp. 1073, 1075 (E.D. La. 1983) ("[D]eputies lack any legal entitlement to their position, [so] a sheriff may fire them for any number of reasons or for no articulable reason at all.").

Short asserts that the stipulated order transformed his status as an at-will employee to one who could be terminated only for cause. Nothing in the order, however, indicates that captains like Short could be terminated only for cause. In fact, the order provides broad discretion to the compliance director to terminate higher-ranked employees for a variety of reasons, including "misconduct, failing to satisfy job expectations, [and] financial prudence." Moreover, the order is temporary; it is intended to expire once jail conditions sufficiently improve. It would be unusual to read the order to give Short protection against at-will discharge for an indefinite, yet temporary period of time. Lastly, the order specifies that the compliance director can be removed only "for good cause," but uses no such language with respect to captains like Short.

Accordingly, Short has no property right to continued employment because the stipulated order does not "constrain the [compliance director] in a meaningful way from discharging" him, nor does the order "explicitly provide" that he "can only be terminated for cause." *Stem*, 813 F.3d at 212. Instead, the order "provide[s] considerations for the exercise of discretion," *id.*, and

7

therefore "merely establishes a procedure through which termination must be accomplished," *Evans,* 861 F.2d at 849.

## B.

"A constitutionally protected liberty interest is implicated only if an employee is discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities." *Sims v. City of Madisonville,* 894 F.3d 632, 642 (5th Cir. 2018) (quoting *White v. Thomas,* 660 F.2d 680, 684 (5th Cir. Nov. 1981)). This clam "lies against the government employer, not a government employee or official," *id.*, because it is the responsibility of the government employer to provide "a public forum or opportunity to clear one's name" when discharge implicates a liberty interest, *Rosenstein v. City of Dallas,* 876 F.2d 392, 395 (5th Cir. 1989), *reinstated en banc in pertinent part,* 901 F.2d 61 (5th Cir. 1990).

A seven-factor test determines whether a terminated government employee suffered the deprivation of a liberty interest. *Miller v. Metrocare Servs.,* 809 F.3d 827, 833 (5th Cir. 2016) (citing *Bledsoe v. City of Horn Lake,* 449 F.3d 650, 653 (5th Cir. 2006)). Under that a test, a plaintiff must establish that:

> (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request.

*Id.* (citing *Bledsoe,* 449 F.3d at 653). As relevant to this appeal, the "public disclosure must be fairly attributable to the defendant employer." *Hughes v. City of Garland,* 204 F.3d 223, 227 (5th Cir. 2000).

No. 19-30314

As a preliminary matter, the compliance director was not Short's "government employer" and therefore Maynard and Hodge cannot be liable for depriving Short of a liberty interest. *Sims*, 894 F.3d at 642. As noted, the compliance director was established by the court to help implement the consent decree for a temporary period of time.

With respect to Gusman, Short's liberty-interest claim fails on the merits. Short alleges that law enforcement officials "ruined [his] reputation and career" by telling others, inaccurately, that he failed a drug test for methamphetamine and cocaine. Short has failed to establish, however, that these remarks were an "'intentional or official' disclosure" that is "fairly attributable" to his employer, the OPSO. *Hughes*, 204 F.3d at 227-28. Moreover, Gusman persuasively argues that failing a drug test, whether for oxycodone or for another drug, is a distinction that is unlikely to matter to other law-enforcement employers. Consequently, Short's liberty-interest claim fails.[4]

## C.

Among other things, Louisiana's drug-testing law grants employees a "right to confidentiality" regarding "information received through the employer's drug testing program and sets forth the circumstances under which an employee may assert a claim for 'defamation of character, libel, slander, or damage to reputation or privacy.'" *Sanchez v. Ga. Gulf Corp.* (*Sanchez II*), 2002-0904 (La. App. 1 Cir. 11/12/03); 860 So. 2d 277, 282-83 (emphasis omitted)

---

[4] Short correctly notes that the district court did not explicitly analyze his liberty-interest claim; however, it was pleaded as part of his § 1983 claim below, which the district court dismissed. Moreover, Maynard and Hodge argued below that Short's liberty-interest claim failed.

(quoting La. Stat. Ann. § 49:1012). The parties dispute whether this law creates a private cause of action for wrongful termination.

"When interpreting state law, we are 'guided by the decisions of state intermediate appellate courts unless other persuasive data indicate[ ] that the [state's] Supreme Court would decide otherwise.'" *Stem*, 813 F.3d at 213 (alterations in original) (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 646 (5th Cir. 2002)).

In a case known as *Sanchez I*, a Louisiana appellate court upheld a trial court's determination that an at-will employee could pursue a wrongful-termination claim under Louisiana's drug-testing statute. *Sanchez v. Ga. Gulf Corp.* (*Sanchez I*), 2002-1617 (La. App. 1 Cir. 8/13/03); 853 So. 2d 697, 705-06. Following a remand from the Louisiana Supreme Court, however, the appellate court reversed the trial court. *Sanchez II*, 860 So. 2d at 279, 283-84. The *Sanchez II* court specified that that the statute does not "subject [the employer] to liability for wrongful termination, nor do[es it] prohibit the employer from terminating an at-will employee" if the employer fails to comply with the statute's requirements. *Id.* at 283. Following *Sanchez II*, other courts have similarly found that the drug-testing statute does not create a cause of action.[5] Short cites no cases (other than *Sanchez I*) in support of his claim.

As noted, the stipulated order did not modify Short's status as an at-will employee. The compliance director could fire Short for a variety of reasons, including misconduct, failing to satisfy job expectations, and financial

---

[5] *See, e.g.*, *Tilson v. DISA, Inc.*, No. CV 17-240, 2018 WL 3132607, at *2 (M.D. La. June 26, 2018) ("Louisiana does not recognize a claim [against employers] for wrongful termination resulting from a drug test performed in violation of the [drug-testing statute]."); *see also Narcisse v. Turner Indus. Grp., LLC*, No. CV 11-2659, 2012 WL 1565293, at *3-4 (E.D. La. Apr. 30, 2012) (noting that "Louisiana precedent only cites to discrimination statutes as those that cannot be violated when terminating an at-will employee" and concluding that Louisiana's drug-testing statute did not create a cause of action).

prudence. Accordingly, Short's claim under Louisiana's drug-testing law is foreclosed by *Sanchez II*.

## V.

For the foregoing reasons, we AFFIRM the judgment of the district court.